UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HAIDER DAKHIL AL-KHUZAI,            )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   Case No. 4:15-CV-261-RLW
                                    )
CAROLYN COLVIN,                     )
ACTING COMMISSIONER OF SOCIAL       )
SECURITY,                           )
                                    )
        Defendant.                  )
                                    )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Haider Dakhil Al-Khuzai's ("Al-Khuzai") application for disability insurance benefits under Title II and Title XVI of the Social Security Act.

### I. Background

Al-Khuzai alleged that he had been disabled since April 1, 2010. (Tr. 13). Al-Khuzai alleged disability based upon right knee impairment and anxiety. (Tr. 15-17).

The Social Security Administration ("SSA") denied Al-Khuzai's application for benefits, and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The SSA granted Al-Khuzai's request and a hearing was held on September 23, 2013. The ALJ issued a written decision on October 17, 2013, upholding the denial of benefits. (Tr. 13-23). Al-Khuzai filed a timely Request for Review of Hearing Decision with the Appeals Council (Tr. 9). The Appeals Council denied Al-Khuzai's Request for Review. (Tr. 1-3). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107

(2000). Al-Khuzai filed this appeal on February 10, 2015. (ECF No. 1). Al-Khuzai filed a Brief in Support of her Complaint on October 30, 2015. (ECF No. 17). The Commissioner filed a Brief in Support of the Answer on November 19, 2015. (ECF No. 18). Al-Khuzai did not file a reply brief within the time provided for under the Case Management Order.

## II. Decision of the ALJ

The ALJ found that Al-Khuzai had the following severe impairments: right knee status post arthroscopy. (Tr. 15). Anxiety was considered a non-severe impairment. (Tr. 17). The ALJ, however, determined that Al-Khuzai did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 17). The ALJ found that Al-Khuzai had the residual functional capacity ("RFC") to lift and carry 10 pounds frequently; sit for 6 hours in an 8 hour day; stand and walk for 2 hours in an 8 hour day; continuously use hand and arm controls, use foot and leg controls on the left, feel, finger, handle, and reach; occasionally use foot and leg controls on the right, climb ramps and stairs, balance, stoop, kneel crouch, crawl, and bend; never climb ladders, ropes and scaffolding; avoid all unprotected heights, hazardous machinery, and industrial vibrations; and stay on-task for at least 95% of the work day with no more than 5% loss in productivity. (Tr. 17). The ALJ found that Al-Khuzai was unable to perform his past relevant work. (Tr. 21). However, the ALJ determined that, based on Al-Khuzai's RFC, jobs exist in significant numbers in the national economy that Al-Khuzai could perform. (Tr. 22). Consequently, the ALJ found that Skelton was not disabled. (Tr. 23).

## III. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. Hearing Testimony

Al-Khuzai testified on September 23, 2013, as follows:

Al-Khuzai has a twelfth grade education. He reads and writes English, but not very well. (Tr. 30). His principal language is Arabic. (Tr. 30). Al-Khuzai has a valid Class P (passenger) driver's license. (Tr. 31-32). His license has never been suspended. (Tr. 32). He has no history of abusing alcohol, street drugs, or unauthorized prescription drugs. (Tr. 32). He has had no encounters with law enforcement, including any lawsuits. (Tr. 32-33).

Al-Khuzai testified that he cannot sit for more than 15 or 20 minutes before he has to stretch his knee or back. (Tr. 34-35). After 20 minutes, he must stand up, walk a little bit, and then return to sitting. (Tr. 35). His right leg bothers him. (Tr. 35). He can walk for about 5 minutes before he has to return to sitting. (Tr. 35). He can stand in place for 2-3 minutes. (Tr. 36). He can walk a half a city block. (Tr. 36-37). He has a cane that he got from Walgreens after his first surgery, which was more than a year and a half ago. (Tr. 37-38). He cannot crouch down on his knees. (Tr. 39). He can reach and extend his arms. (Tr. 39). He can sign his name with his right hand. (Tr. 39). He can lift between 5-10 pounds with both hands. (Tr. 40). His wife does the grocery shopping. (Tr. 40). He cannot push or pull a grocery cart with 10 pounds of items in it for 10 steps. (Tr. 40-41). He does not think he can push and pull an empty grocery cart because it would hurt his right knee. (Tr. 41). He can walk heel toe, heel toe, but it hurts his right knee. (Tr. 42). He can make a fist with either hand. (Tr. 42). He can press his thumb and fingers of each hand. (Tr. 42). He can zipper, button, and buckle in order to dress and undress and maintain his personal hygiene on a daily basis. (Tr. 42). He has no problems with his senses of vision, hearing, smell and breathing, as well as his speech. (Tr. 43). He has no particular sensitivity to bright lights or loud noise, but darkness bothers him. (Tr. 43). He has no problems with dust, dog or cat dander, or mold sensitivity, but he does not like it. (Tr. 43-44). On an

3

average night he gets a couple hours of sleep. (Tr. 44). He has trouble sleeping because he has very bad memories of Iraq, including people dying and bombs. (Tr. 44). He has trouble sleeping because of his bad memories usually 2-3 times per week. (Tr. 45). He takes medication for his knee, but he continues to have problems. (Tr. 45). He lives in an apartment. (Tr. 45). He cannot do any cooking because he cannot stand. (Tr. 45-46). He cannot clean because he cannot pick things up or go downstairs to do the laundry. (Tr. 46). He has difficulty going up and down stairs. (Tr. 46). He cannot vacuum or mop the floor because it hurts him. (Tr. 46). He also suffers from anxiety, which causes him to not like to be around people. (Tr. 47).

The vocational expert Amy Mallory testified as follows:

The ALJ presented a hypothetical person who is able to lift and carry 10 pounds occasionally, sit six hours out of an eight hour day, stand and walk two hours out of an eight hour day, with no established limitations with hand and arm controls; the left leg has no established limitation, but the right leg is reduced to occasional because of knee problems; no established limitations with respect to feeling, fingering, handling, or reaching; never ladders, ropes, or scaffolds; occasional ramps, stairs, balancing, stooping, kneeling, crouching, crawling, and bending; no limitations on chemicals, fumes, dust, dog, cat dander or mold; no limitations on temperature; no unprotected heights, no hazardous moving machinery; and only time off task of five percent of the work day with a loss of productivity of five percent. (Tr. 49-50).

Ms. Mallory testified that the hypothetical person would not be able to perform his past work because it was all at medium exertional level, but he would be able to perform unskilled, sedentary work: document preparer, final assembler, and sorter. (Tr. 50-51).

The ALJ presented a second hypothetical person, who would be able to sit 20 minutes, stand five minutes, and walk a half a block for the same periods of time indicated for a total of

4

six hours, standing and walking two hours, and this person would afford a need for an option to sit, stand, stretch and/or change position to enable relief of discomfort. (Tr. 52). Ms. Mallory indicated that these limitations would not affect the person's ability to perform the described jobs, as long as the person could stay on task while changing positions. (Tr. 52).

The ALJ presented a third hypothetical person with the same exertional limitations but the non-exertional limitations are limited because of lack of sleep, pain and discomfort, and overall distractions such that a person would be off task eight percent of the time and would be able to interact with the general public only occasionally, supervisors frequently (but no direct contact), and coworkers frequently but no joint tasks, working with things rather than people, and no joint decision making. (Tr. 53). In addition, this hypothetical person could do work that was simple, repetitive, unskilled tasks and with the ability to make changes in the work setting. Ms. Mallory indicated that this hypothetical person could not perform work as a document preparer, but this person could work as an inspector. (Tr. 53-54).

The claimant's counsel asked Ms. Mallory to consider the third hypothetical person, but this person could perform no kneeling, crouching, or crawling and would be off task 10 percent of the time with a 10 percent loss of productivity. (Tr. 54). Ms. Mallory said that such a person would not be able to perform work because of the excessive time being off-task. (Tr. 54). Ms. Mallory clarified that no jobs would be available because of the excessive time being off-task, not because of the limitation related to kneeling, crouching or crawling. (Tr. 55).

**B.     Medical Records**

Al-Khuzai's relevant medical records are summarized as follows:

On July 1, 2009, Al-Khuzai was seen at Grace Hill and prescribed sertraline. (Tr. 397).

5

On March 23, 2010, Al-Khuzai was seen by Dr. Kieffer at St. Louis University Hospital ("SLU") for chronic symptoms of medial joint tenderness and a horizontal cleavage tear in the medial meniscus, right knee. (Tr. 241-44). Al-Khuzai indicated he wanted to proceed with arthroscopy and medial partial meniscectomy. On May 4, 2010, Al-Khuzai was seen a week following his partial meniscectomy and arthroscopy. (Tr. 240). On May 25, 2010, Al-Khuzai was seen for his one week post-operative appointment. (Tr. 237-38). He had near full extension and his incision was healing well. On June 1, 2010, Al-Khuzai was seen for his two week post-operative appointment. (Tr. 236). Dr. Kieffer noted minimal effusion. On June 15, 2010, Al-Khuzai was seen for a four week follow-up appointment. (Tr. 235). Al-Khuzai had a full passive range of motion of the knee, and there was only slight effusion. On June 29, 2010, Al-Khuzai was seen by Dr. Kieffer at SLU for a six week follow up appointment. (Tr. 234). Al-Khuzai still had a "trace of effusion." On July 13, 2010, Al-Khuzai was seen for an 8 week appointment following from his ACL hamstring reconstruction surgery. (Tr. 233). Dr. Kieffer noted minimal effusion and proscribed independent rehabilitation. On August 10, 2010, Al-Khuzai was seen by Dr. Kieffer at SLU for a 12 week follow up appointment. (Tr. 232). Dr. Kieffer noted minimal swelling, trace effusion, and an active range of motion.

On December 27, 2010, Al-Khuzai was seen at Grace Hill for chest discomfort and dizziness. (Tr. 402). On July 27, 2011, Al-Khuzai was seen at Grace Hill for chest pain. (Tr. 407-09). On September 30, 2011, Al-Khuzai was seen at Grace Hill with complaints of knee pain. (Tr. 410-11). Al-Khuzai was prescribed acetaminophen. On November 2, 2011, Al-Khuzai was seen at Grace Hill for right knee pain. Al-Khuzai indicated that the pain began 8 months ago. (Tr. 416-19). Al-Khuzai was prescribed ibuprofen.

On January 13, 2012, Al-Khuzai was seen at Grace Hill for right knee pain. (Tr. 422-23). Al-Khuzai was prescribed naproxen and vicodin. On February 2, 2012, Al-Khuzai was seen by St. Louis Connect Care for right knee pain. (Tr. 343-44). On February 24, 2012, Al-Khuzai was seen at Grace Hill for chest pain. (Tr. 425-26). Al-Khuzai was prescribed tramadol and vicodin.

On April 12, 2012, Geraldine Boeger performed a Residual Functional Capacity Assessment for Al-Khuzai. (Tr. 301-06). It indicated that Al-Khuzai could lift 10 pounds occasionally and frequently and stand for at least 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, limited push-pull in the right lower extremity; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, occasionally balance, stool, kneel, crouch, and crawl. (Tr. 302-03).

On May 31, 2012, Al-Khuzai was seen for a follow-up regarding right knee pain. (Tr. 347-49). He was referred for arthroscopy. On September 11, 2012, Al-Khuzai was seen at Connect Care for a follow-up regarding his knee pain. (Tr. 345).

On October 25, 2012, Dr. Cutuk performed a right knee arthroscopy with medial meniscal debridement, limited chondroplasty medial compartment and patellofemoral compartment, plica excision. (Tr. 327-28). Al-Khuzai was described as an "active young gentleman."

On November 14, 2012, Al-Khuzai was seen at Grace Hill for a possible urinary tract infection. (Tr. 430-31). Al-Khuzai was taking tramadol and Vicodin.

On July 16, 2013, Al-Khuzai was seen at Connect Care with complaints of lower right side back pain, right knee pain and insomnia. (Tr. 350-51).

7

On July 25, 2013, Al-Khuzai was seen at Grace Hill. (Tr. 432-33). Al-Khuzai had a history of insomnia, anxiety and right knee cartilage injury. Al-Khuzai was prescribed sertraline. (Tr. 433).

On September 5, 2013, Al-Khuzai was seen at Grace Hill for anxiety and insomnia. (Tr. 337). Al-Khuzai was prescribed nortriptyline. On September 17, 2013, Al-Khuzai was seen at Grace Hill for right knee pain and insomnia. He was prescribed nortriptyline, tramadol, and ibuprofen. (Tr. 339).

## IV.  Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[1] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national

---

[1] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

9

economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## V. Discussion

### A. Mental Impairment

Al-Khuzai claims that the ALJ committed reversible error by failing to find a severe mental impairment. (ECF No. 17 at 10). Al-Khuzai testified that he had bad dreams about what he saw in Iraq when he was imprisoned there. Al-Khuzai reported "a depressed mood on and off as well as insomnia." *Id.* Al-Khuzai testified that he had difficulty getting along with people and that he preferred to stay by himself. Al-Khuzai's medical records describe complaints of insomnia and that sertraline was prescribed. *Id.* Al-Khuzai maintains that his "testimony, along with the medical records from Grace Hill clearly show that [his] mental impairment causes more than just a minimal limitation in his ability to perform work functions" and that his mental impairment should be found to be "severe." *Id.*

The Court holds that there is substantial evidence in the record to support the ALJ's finding that Al-Khuzai's mental impairment was not severe. The ALJ considered Al-Khuzai's history of mental health treatment and acknowledged his medically determinable mental impairment of anxiety when he determined that this constituted a non-severe impairment. (Tr. 16-17, 19-21). A severe impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities" without regard to age, education, and work experience. 20 C.F.R. §404.1520(c). In considering Al-Khuzai's anxiety, the ALJ found that Al-Khuzai had no limitation in the activities of daily living; no limitation in social functioning; a mild limitation in concentration, persistence or pace; and no episodes of decompensation which have been of extended duration. (Tr. 16). The ALJ noted that Al-Khuzai had trouble sleeping and that he preferred to be by himself. (Tr. 16-17). The ALJ indicated that the treatment notes supported the insomnia allegations, but not the allegations

of social limitations. (Tr. 17). The ALJ discussed supporting evidence that Al-Khuzai frequently interacted with others, spent time with his family, attended mosque twice a week, and shopped. (Tr. 19, 183-92). Therefore, the ALJ included a mild limitation in concentration, persistence, and pace due to Al-Khuzai's fatigue and irritability on account of his insomnia.

Furthermore, the ALJ noted that Al-Khuzai had sought limited treatment for mental-health related concerns. (Tr. 20). Al-Khuzai was not seen for any anxiety issues until July 2013. Even once Al-Khuzai was seen, he was only treated by his primary care physician. The ALJ determined that the short duration and very conservative treatment of Al-Khuzai's anxiety disorder strongly suggested that it was not as limited as alleged. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("although Buckner was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that his depression and anxiety was not severe").

Finally, the Court notes that, even though the ALJ determined that Al-Khuzai's anxiety was not a severe impairment, he accounted for the combination of Al-Khuzai's impairments, by limiting Al-Khuzai's RFC to include a limitation that he was allowed to work with up to a five percent loss in productivity by staying on task at least 95 percent of the workday.

Based upon the foregoing, the Court holds that the ALJ properly determined that Al-Khuzai's mental impairments and accounted for any mental limitations in the RFC.

### B.    RFC was based on Substantial Evidence

Al-Khuzai argues that ALJ found that Al-Khuzai had the RFC to perform sedentary work with all postural activities, including balancing, stooping, kneeling, crouching, crawling, and bending. Al-Khuzai asserts that the ALJ's RFC finding was not based upon substantial evidence. Al-Khuzai notes that he testified at the hearing that he was unable to crawl on the floor and that

the pain in his leg/knee is constant and that the medication he is prescribed does not relieve all of his pain. (ECF No. 17 at 10-11). Instead, Al-Khuzai argues that the ALJ erroneously relied on the physical residual functional capacity assessment of a non-examining, non-treating, non-medical source. (ECF No. 17 at 11 (citing Tr. 31). Al-Khuzai maintains that such forms are entitled to little weight and do not constitute "substantial evidence" to support an RFC determination. (ECF No. 17 at 11).

The Court holds that there was substantial evidence to support the RFC. First, the ALJ limited Al-Khuzai's postural activities, including climbing, balancing, stooping, kneeling, crouching, crawling, and bending to only "occasionally." (Tr. 17, 21). The ALJ also found that Al-Khuzai could never climb ladders, ropes, or scaffolds. (Tr. 17).

The Court also finds that the ALJ did a proper credibility determination as part of his RFC analysis. "Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "The duty of deciding questions of fact, including the credibility of [Al-Khuzai's] subjective testimony, rests with the Commissioner." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg*, 354 F.3d at 714 (citing *Russell v. Sullivan,* 950 F.2d 542, 545 (8th Cir. 1991)). The ALJ cited to the lack of objective medical evidence to support Al-Khuzai's alleged degree of pain and limitation. (Tr. 15-17, 19). The ALJ noted the nature and effectiveness of Al-Khuzai's treatment measures, including medications and right knee surgeries. (Tr. 15-16). Al-Khuzai received largely conservative medical treatment, including use of over-the-counter medications, physical therapy, and rehabilitation. (Tr. 15-16). The ALJ acknowledged that Al-Khuzai had significant activities of daily living. (Tr. 19). The ALJ noted

13

that Al-Khuzai reported in his function report that he takes his children to school, uses the computer, watches television, picks his children up from school, and goes to the store. (Tr. 19). The ALJ found that these activities were consistent with the RFC. Finally, the ALJ noted the lack of opinions from treating physicians and the opinions of other non-examining sources. (Tr. 21). The record did not contain any treating source opinions. (Tr. 20-21). The single decision maker, a non-medical professional, opined that the claimant could perform sedentary work, while occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The ALJ found that the single decision maker's findings were consistent with the overall medical evidence, and the ALJ added additional limitations to account for Al-Khuzai's anxiety and extended knee issues. *See Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."). Based upon all of these, the ALJ determined Al-Khuzai's RFC and concluded that Al-Khuzai had some significant restrictions due to his medical impairments. These medical impairments were reflected in his sedentary range RFC determination. However, the ALJ found that Al-Khuzai's allegations of disability were less than fully credible. The record before the Court demonstrates that Al-Khuzai's subjective complaints of pain were not so severe as to be disabling, particularly based upon his activities of daily living. *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (quoting *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996)( "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability."). Based upon the foregoing, the Court holds that the ALJ's finding that Al-Khuzai was not disabled is based upon substantial evidence.[2]

---

[2] The Government also argued that the ALJ properly determined Al-Khuzai could perform other

14

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 7th day of March, 2016.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

---

work. This argument does not appear to be addressed by Al-Khuzai and, therefore, the Court does not address it here.